# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Robin P. Eble** | : |
| 14 Delaware Avenue | : |
| Hainesport, NJ 08036 | : |
| | : |
| *Plaintiff* | : |
| **v.** | :    **Civil Action No.** |
| | :    _____ |
| **AMERICAN NEIGHBORHOOD** | : |
| **MORTGAGE ACCEPTANCE COMPANY,** | : |
| **LLC** | : |
| **d/b/a ANNIEMAC HOME MORTGAGE** | : |
| 700 East Gate Drive, Suite 400 | : |
| Mount Laurel, NJ 08054 | : |
| | : |
| *Defendant* | : |

## COMPLAINT

Plaintiff, Robin P. Eble, through her counsel, FELLHEIMER & EICHEN LLP, files this Complaint against defendant, AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY, LLC d/b/a ANNIEMAC HOME MORTGAGE and avers as follows:

### Jurisdiction and Venue

1.      Plaintiff, Robin P. Eble, (herein "**Eble**" or "**Plaintiff**"), is a resident of New Jersey with a residence at 14 Delaware Avenue, Hainesport, New Jersey 08036.

2.      Eble has over ten (10) years of experience working with residential mortgages and related home financing. Eble is, and was at all times herein relevant, a licensed Mortgage Loan Originator in both the State of New Jersey and the Commonwealth of Pennsylvania.

3.      The AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY, LLC d/b/a ANNIEMAC HOME MORTGAGE (herein, "**AnnieMac**" or "**Defendant**") is Limited Liability Company created and registered under the law of the State of Delaware.

1

4.    AnnieMac is a mortgage lender and broker with a place of business located at 700 East Gate Drive, Suite 400, Mount Laurel, New Jersey 08054, with approximately forty (40) branches located around the country. AnnieMac's Mount Laurel office is its headquarters office.

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121(a)—which provides the District Court with original jurisdiction for claims alleging a violation of the Lanham Act.

6.    The Court has supplemental jurisdiction over the other claims pursuant to 28 U.S.C. § 1367 as all claims arise out of the same case or controversy.

7.    Venue is proper in the District of New Jersey under 28 U.S.C. §§ 1391(b)(1-3), as (a) the Defendant is headquartered in this judicial district, (b) a substantial part of the events or omissions giving rise to these claims occurred in this district, and (c) the Defendant is subject to personal jurisdiction in this district.

## General Allegations

8.    Plaintiff Eble is a former employee of Defendant AnnieMac who began work as a Mortgage Loan Originator for Defendant in September, 2011.

9.    As a Mortgage Loan Originator, Eble acted as an outside salesperson for Defendant's mortgage loans and her position's duties included the:

a. Solicitation of potential borrowers for loans;

b. Education of potential borrowers on different available loan products;

c. Analyzation of the income and debt to determine the amount of credit available to a potential borrower;

d. Maintenance of contact with potential borrowers for the period between the initial application and eventual closing of the loan;

    e.   Collection of financial information and other information necessary for the origination of a loan; and

    f.   Sale of loan products to borrowers.

10.    On November 4, 2015, Eble left AnnieMac to work for a competing mortgage company, PROSPECT MORTGAGE, LLC ("**Prospect Mortgage**").

11.    Prospect Mortgage is a residential real estate lender headquartered in Sherman Oaks, California, with branches located around the country, including in New Jersey.

12.    As a Loan Officer for Prospect Mortgage, Eble is similarly responsible for originating loans to potential borrowers.

13.    Eble's office for Prospect Mortgage is located at 302 Harper Drive, Suite 301 Moorestown, New Jersey 08057.

14.    Eble's current office is around the corner from AnnieMac's headquarters and the two offices are both in Burlington County and less than half a mile apart.

15.    Eble's compensation is entirely commission based. Eble receives a percentage of each loan she originates as incentive compensation.

16.    The percentage of the loan amount Eble receives as incentive compensation is determined by the total number of loans she originates in a month and/or the total dollar amount of loans she originates in a month.

17.    Eble, therefore, receives increased compensation when she originates multiple loans in a single month.

18.    As a Loan Officer for Prospect Mortgage, and previously as a Loan Originator for Annie Mac, Eble dedicates significant time, energy, and resources into developing her professional reputation and client base.

19.     Eble's ability to originate mortgages depends, not only on the underlying mortgage products offered by her employer, but also her own efforts and responsiveness to potential borrowers, professional contacts, knowledgeability of possible mortgage products, and ability to assess, cultivate and properly advise potential borrowers of the loan products which best suit their needs.

20.     All of Eble's business is self-generated through networking efforts and word of mouth. Eble especially relies on the relationships she develops with referral partners, such as realtors, financial advisors, accountants, and previous clients.

21.     Eble's success depends in large measure on the reputation and individual brand she has developed over her more than a decade of experience in the home mortgage industry, as spread by satisfied clients, other real estate professionals, and her own marketing and networking efforts.

22.     To that end, Eble markets her own name and reputation. For example, Eble (a) maintains an active social media presence to market her services, (b) is profiled on various real estate websites as a mortgage lender, (c) conducts face-to-face meetings with potential referral partners; and (d) has her own section of Prospect Mortgage's website which prominently displays her picture and individual contact information, among other things.

23.     As a result of these efforts, Eble is well known in the mortgage and real estate industries in both New Jersey and Pennsylvania as an honest, competent, and diligent mortgage originator.

24.     AnnieMac is aware of the importance of its individual loan originator's reputations in selling mortgage products, as it maintains a "Testimonials" section of its website

where it publishes positive feedback about its employees and loan originators. *See, e.g.*,

https://annie-mac.com/testimonials.

25.     As late at May 19, 2016, at least one such testimonial from "Maureen H. Mount

Laurel, NJ", prominently featured on AnnieMac's website, directly praises Eble and expresses a

desire to work with her again in the future. https://wilmington.annie-

mac.com/index.php?s=testimonials&a=&rowsPerPage=25&searchPage=3.

26.     The testimonial about Eble states:

> Maureen H. Mount Laurel, NJ
>
> "Hi Jeremiah, Just wanted to send a quick note to let you know
> what a superior job Robin Eble has done for me on my most recent
> sale. Nothing ever seems to be a problem for her. She goes over,
> above and beyond what is expected of a loan officer. She is an
> asset to you and your company. In my minds eye, she is a keeper. I
> hope to do more business with Robin in the future."

27.     On March 24, 2016, more than four (4) months after Eble began working for

Prospect, AnnieMac sent, upon information and belief, a mass marketing and advertising letter

purported to be from Robin Eble to potential borrowers soliciting business for AnnieMac's

business (collectively, the "**Imitation Letters**"). A true and correct copy of an example of one

such Imitation Letter is attached hereto as **Exhibit A**.

28.     Although the Imitation Letters purport to be from Eble and clearly bear her name,

supposed contact information, and Nationwide Multistate Licensing System (NMLS) number at

the bottom of the page, Eble was no longer affiliated with Defendant, nor did she consent to the

Defendant's use of her name in its business or advertising, or endorse Defendant's product(s).

29.     The Imitation Letters prominently display Defendant's address, logo and service

mark at the top of the page.

5

30.     The Imitation Letters specifically solicit the potential borrowers to contact AnnieMac, stating: "Please use this notice as a reminder to call AnnieMac Home Mortgage since it has been 150 days since we first reviewed your credit."

31.     The Imitation Letters also endorse Defendant's products in Eble's voice, stating: "Our goal is to make this process as pleasurable as possible for you… Our priority here at American Neighborhood Mortgage Acceptance Company, LLC is for you to experience a smooth and efficient process."

32.     While Eble was employed by AnnieMac, AnnieMac did not automatically send letters to clients or potential clients on Eble's behalf.

33.     In order to send such a letter, an individual loan originator would be required to access AnnieMac's marketing website "AAMP", which contained a library of advertising materials approved and vetted by AnnieMac, select a specific advertising piece from the website, insert the loan originator's contact information, and request that the letter be sent.

34.     Eble never requested, through AAMP or otherwise, that AnnieMac send a letter to current, past, potential clients on her behalf, even when she was employed by AnnieMac.

35.     Eble spoke to several recipients of the Imitation Letters. Each recipient Eble spoke to had previously applied for mortgage preapproval through Eble while Eble worked for AnnieMac.

36.     Whenever Eble received an application for mortgage preapproval while working for AnnieMac, she entered the application, including contact information of the potential borrower, into a computer system called "Encompass," which stored this information for future use.

37.     Encompass is a brand of loan origination software used by many mortgage lenders, including AnnieMac.

38.     Other mortgage originators did not have access to information entered into Encompass by Eble. However, AnnieMac's branch managers, Marketing Department, and other high level employees had access to Eble's Encompass information.

39.     During her time working for AnnieMac, Eble entered *hundreds* of loan applications from potential borrowers into Encompass.

40.     Upon information and belief, AnnieMac sent Imitation Letters to every loan applicant Eble entered into Encompass.

41.     Discovery is needed to determine the number of Imitation Letters Defendant sent to potential borrowers in addition to the example attached and determine the full extent of AnnieMac's misuse of Eble's name and reputation. However, if AnnieMac sent Imitation Letters to each loan applicant Eble entered into Encompass, then hundreds of potential borrowers were recipients and affected.

42.     Furthermore, publicly available documents confirm that AnnieMac previously has sent letters to potential borrowers imitating at least one of its former loan originator other than Eble. A publicly available complaint with the BETTER BUSINESS BUREAU submitted on January 20, 2015 (herein the "**BBB Complaint**") complains of conduct strikingly similar to the instant case. The complaint is available at: http://www.bbb.org/new-jersey/business-reviews/mortgage-bankers/american-neighborhood-mortgage-acceptance-company-in-mount-laurel-nj-90106800/complaints.

43. The name of the complaining loan originator and the AnnieMac representative she spoke to are redacted in the publicly available complaint. However, the BBB Complaint indicates:

> I used to work as a licensed mortgage originator for American Neighborhood Mortgage Acceptance Company but resigned my position in June 2013. Months after I resigned, I was notified by numerous past clients that they received advertising pieces that were mailed to them from American Neighborhood Mortgage Acceptance Company with my name and NMLS number on them. I contacted American Neighborhood Mortgage Acceptance Company several times asking them to stop using my information on their advertising. Finally on my 3d call, I spoke to ******* ******* from American Neighborhood Mortgage Acceptance Company who assured me that this would stop immediately. After speaking with Mr. *******, it seemed to have stopped. However, beginning 11-20-14, I received a number of calls from my past clients asking me if I went back to American Neighborhood Mortgage Acceptance Company for employment. When I told them I had not gone back to American Neighborhood Mortgage Acceptance Company, they told me that they were receiving advertising in the mail from them with my name and NMLS number on them. (alteration in original).

44. The BBB Complaint requests that AnnieMac provide compensation for lost business and a list of the loan originator's former clients that AnnieMac contacted in order to correct the misinformation contained in the advertising sent.

45. Although Annie Mac's response to the BBB Complaint is not public, the loan originator "rejected" Annie Mac's response and the BBB Complaint is listed in a portion of the web page where "The Business addressed the issues within the complaint, but the consumer did not accept the response."

46. Defendant knowingly, purposely, and willfully sent the Imitation Letters after Eble left AnnieMac, as demonstrated in part by the deliberate steps necessary to generate the Imitation Letters through AAMP and the fact that AnnieMac previously responded to the BBB Complaint which alleged that AnnieMac sent letters imitating another former loan originator.

8

47. Upon information and belief, Defendant has originated loans as a result of the Imitation Letters and misuse of Eble's name and reputation.

48. Upon information and belief, Defendant sent other letters similar to the Imitation Letter or otherwise advertised using Eble's name to promote their loan products without her permission or consent and without payment of any compensation to her.

49. AnnieMac and Eble are competitors seeking to originate loans to potential borrowers in the same geographic area.

50. The Imitation Letters are confusing to the public because they falsely indicate that Eble is affiliated with Defendant and endorses their loan products.

51. The recipients of the Imitation Letters that Eble spoke to were confused because it appeared to them that Eble still worked for AnnieMac and was sending them advertisements to generate business for AnnieMac.

52. The Imitation Letters also risk confusing the regulators which monitor loan originators. As a Loan Originator, Eble is required to maintain an active license to originate loans through the NATIONAL MULTISTATE LICENSING SYSTEM AND REGISTRY ("**NMLS**") for each state in which she originates loans.

53. Pursuant to this license, Eble is required to report which mortgage company she works for, which is known as her "sponsor." Currently, her sponsor is Prospect Mortgage.

54. In order to maintain her Pennsylvania License, Eble is not permitted to market, advertise, or otherwise engage in the mortgage loan business on behalf of a company other than her sponsor. 7 Pa. C.S.A. § 6131(f)(5). Similarly, in order to maintain her New Jersey License, Eble is required to maintain employment as a loan originator with one, *and not more than one*, mortgage lender. *N.J.S.A.* § 17:11C-54(c)(1).

9

55. The Imitation Letters, which bear Eble's NMLS number without her knowledge or consent, create the appearance that she violated these restrictions and potentially threaten her licenses.

56. The Imitation Letters are also damaging to Eble's professional reputation because they falsely associate her with Defendant and indicate that Eble endorses loan products which she herself does not sell. In effect, the letters indicate that Eble does not support the loan products in which she deals or that AnnieMac's products are superior.

57. Eble was further damaged, among other things, because:

   a. The Imitation Letters direct potential borrowers away from her and towards AnnieMac.

   b. Eble receives no incentive compensation for the origination of the loans AnnieMac issues to recipients of the Imitation Letters.

   c. Eble receives a reduced rate of incentive compensation because the loans originated by AnnieMac as a result of the Imitation Letters are not included in the calculation which determines the rate of Eble's incentive compensation.

   d. Eble loses the economic benefits of a long-term relationship with the recipients of the Imitation Letters and any future business they would generate or direct to Eble.

   e. Threatening Eble's NMLS licenses by falsely implicating that Eble marketed a mortgage originator that was not her sponsor or maintained employment with more than one lender.

## Count I
## Lanham Act False Advertising (15 U.S.C. § 1125 (a)(1)(B))

58. Plaintiff incorporates the above paragraphs as though set fully herein.

59. The Lanham Act at 15 U.S.C. § 1125 (a)(1)(B) provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> …
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1)(B).

60. The Imitation Letters, which expressly solicit potential borrowers through mail to originate mortgages with AnnieMac, were commercial advertisements or promotions used in commerce within the meaning of 15 U.S.C. § 1125 (a)(1)(B).

61. The Imitation Letters sent by AnnieMac contained literally false information about its own mortgage products including:

   a. That Eble was associated with AnnieMac, despite her leaving the company months prior to Imitation Letters;

   b. That potential borrowers wishing to originate a loan with Eble could reach her by contacting AnnieMac;

   c. That Eble endorsed AnnieMac's mortgage products; and

   d. That AnnieMac's mortgage products are superior to the mortgage products Eble currently sells for Prospect Mortgage.

62. The Imitation Letters deceived consumers or had a tendency to deceive consumers by falsely associating Eble with AnnieMac and its loan products.

63.     The false statements in the Imitation Letters were material and likely to influence the decisions of consumers, in light of Eble's reputation, the goodwill associated with her name, and AnnieMac's decision to market its product using Eble's name.

64.     The Imitation Letters caused, and will continue to cause, irreparable injury to Eble's business, reputation, and goodwill.

65.     The Imitation Letters further damaged Eble in the form of lost sales, lost incentive compensation, and a reduced overall rate of incentive compensation.

WHEREFORE, Plaintiff requests a judgment in her favor awarding:

a.   Injunctive relief restraining Defendant's and its agents' use of the unlawful advertisements as permitted by 15 U.S.C § 1116;

b.   Damages in an amount to be determined at trial, including Plaintiff's actual losses and costs 15 U.S.C. § 1117;

c.   Defendant's gains as a result of Defendant's unlawful conduct under 15 U.S.C. § 1117;

d.   Pre-judgment and post-judgment interest;

e.   Reasonable attorney's fees under 15 U.S.C. § 1117; and

f.   Such other relief as the Court deems just and proper.

## <u>Count II</u>
## Lanham Act False Association (15 U.S.C. § 1125 (a)(1)(A))

66.     Plaintiff incorporates the above paragraphs as though set fully herein.

67.     The Lanham Act at 15 U.S.C. § 1125 (a)(1)(A) provides in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

...
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125 (a)(1)(A).

68.    Eble's name and persona are distinct and protectable under 15 U.S.C. § 1125 (a)(1)(A).

69.    Defendant's Imitation Letters were an unauthorized use of Eble's name, reputation, goodwill within the community of potential borrowers in the vicinity of Eble's and AnnieMac's offices.

70.    As set forth more fully above, Defendant's explicit use of Eble's name in an advertisement for mortgages is likely to cause and/or did cause, confusion among potential borrowers as to the affiliation, connection, or association between Eble and AnnieMac and falsely indicates that Eble sponsors or approves of AnnieMac's products and services.

71.    The Imitation Letters caused, and will continue to cause, irreparable injury to Eble's business, reputation, and goodwill.

72.    The Imitation Letters further damaged Eble, including lost sales, incentive compensation, and a reduced overall rate of incentive compensation.

WHEREFORE, Plaintiff requests a judgment in her favor awarding:

a.    Injunctive relief restraining Defendant's and its agents' use of the unlawful advertisements as permitted by 15 U.S.C § 1116;

b.    Damages in an amount to be determined at trial, including Plaintiff's actual losses and costs pursuant to 15 U.S.C. § 1117;

c.    Pre-judgment and post-judgment interest;

d.   Defendant's gains as a result of Defendant's unlawful conduct under 15 U.S.C. § 1117;

e.   Reasonable attorney's fees under 15 U.S.C. § 1117; and

f.   Such other relief as the Court deems just and proper.

## <u>Count III</u>
## Violation of the NJ Consumer Fraud Act (N.J.S.A. § 56:8-1, *et seq.*)

73.   Plaintiff incorporates the above paragraphs as though set fully herein.

74.   The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, in relevant part prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

*N.J.S.A.* § 56:8-2

75.   As set forth more fully above, Defendant engaged in unconscionable commercial practice, deception, false pretense, misrepresentation, and/or knowing omission of material facts by sending the Imitation Letters which falsely state that:

a.   Eble was associated with AnnieMac, despite her leaving the company months prior to the sending of the Imitation Letter;

b.   Potential borrowers wishing to originate a loan with Eble could reach her by contacting AnnieMac;

c.   Eble endorsed AnnieMac's mortgage products; and

14

      d.     AnnieMac's mortgage products are superior to the mortgage products Eble currently sells for prospect.

76.     As set forth more fully above, Eble suffered an ascertainable loss as a direct and proximate result of Defendant's unlawful conduct in the form of lost sales, lower incentive compensation, and damage to her professional reputation and goodwill.

77.     A copy of this Complaint shall be sent to the Attorney General of the State of New Jersey within ten (10) days of the date of filing as required by *N.J.S.A.* § 56:8-20.

WHEREFORE, Plaintiff requests a judgment in her favor awarding:

      a.     Actual damages to Plaintiff in an amount to be determined at trial;

      b.     Treble damages as required by *N.J.S.A.* § 56:8-19;

      c.     Prejudgment and postjudgment interest;

      d.     Civil penalties for each violation of the Consumer Fraud Act in an amount not less than $10,000 as provided in *N.J.S.A.* § 56:8-13;

      e.     Injunctive relief barring Defendant from further violating the New Jersey Consumer Fraud Act;

      f.     Reasonable attorney fees, filing fees, and costs of bringing this action as required in *N.J.S.A.* § 56:8-19; and

      g.     Such other relief as the court deems just and proper.

<u>**Count IV**</u>
**Common Law Unfair Competition**

78.     Plaintiff incorporates the above paragraphs as though set forth fully herein.

79.     As set forth more fully above, Defendant's Imitation Letters were false commercial advertisements.

80.    The Imitation Letters sent by AnnieMac contained false information about Eble and its own mortgage products including, that:

      a.    Eble was associated with AnnieMac, despite her leaving the company months prior to sending Imitation Letter;

      b.    Potential borrowers wishing to originate a loan with Eble could reach her by contacting AnnieMac;

      c.    Eble endorsed AnnieMac's mortgage products; and

      d.    AnnieMac's mortgage products are superior to the mortgage products Eble currently sells for prospect.

81.    The Imitation Letters deceived consumers or had a tendency to deceive consumer by falsely associating Eble with AnnieMac and its loan products.

82.    The false statements in the Imitation Letters were material and likely to influence the decisions of consumers, in light of Eble's reputation and goodwill associated with her name and AnnieMac's decision to market its product using Eble's name.

83.    The Imitation Letters caused, and will continue to cause, irreparable injury to Eble's business, reputation, and goodwill.

84.    The Imitation Letters further damaged Eble in the form of lost sales, reduced incentive compensation, and a lower overall rate of incentive compensation.

WHEREFORE, Plaintiff requests a judgment in her favor awarding:

      a.    Injunctive relief restraining Defendant's and its agents' use of the unlawful advertisements;

      b.    Damages in an amount to be determined at trial, including Plaintiff's actual losses and costs;

16

    c.   Defendant's gains as a result of Defendant's unlawful conduct;

    d.   Pre-judgment and post-judgment interest;

    e.   Reasonable attorney's fees; and

    f.   And such other relief as the Court deems just and proper.

## Count V
## Unjust Enrichment

85.    Plaintiff incorporates the above paragraphs as though set forth fully herein.

86.    AnnieMac received benefits from Eble from its use of the Imitation Letters, including but not limited to:

    a.   The use of Eble's name, reputation, and goodwill without Eble's consent to solicit potential borrowers; and

    b.   The income generated by originating loans as a result of the Imitation Letters.

87.    As competitors for the same pool of potential borrowers in the same geographic area, it would be unjust for AnnieMac to retain these benefits.

WHEREFORE, Plaintiff requests judgment in her favor in an amount to be determined at trial, plus pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

## Count VI
## Tortious Interference with Prospective Economic Gain

88.    Plaintiff incorporates the above paragraphs as though set forth fully herein.

89.    Eble had a reasonable expectation that she would receive an economic advantage from the borrowers that received the Imitation Letters by originating mortgages and the continued spread of her reputation as a loan originator.

90.     As evidenced by the fact that Eble ceased working for Defendant months before the Imitation Letters were sent, Defendant sent the Imitation Letters maliciously, intentionally, or without justification.

91.     The Imitation Letters caused Eble to lose the prospective economic advantage.

92.     As a direct and proximate result of the Imitation Letters, Eble suffered damages because she missed out on sales to potential borrowers which were wrongfully diverted to AnnieMac and suffered injury to her reputation as set forth more fully above.

93.     Defendant's conduct was an egregious and outrageous attempt to intentionally sabotage a competitor justifying an award of punitive damage.

WHEREFORE, Plaintiff requests judgment in its favor in an amount to be determined at trial, plus punitive damages, prejudgment interest, postjudgment interest, and such other relief as the Court deems just and proper.

## Count VII
### Identity Theft (*N.J.S.A.* § 2C:21-17.4)

94.     Plaintiff incorporates the above paragraphs as though set forth fully herein.

95.     New Jersey law provides a provide right of action to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use of that person's personal identifying information" in violation of *N.J.S.A.* § 2C:21-17 (the Identity Theft Statute). *N.J.S.A.* § 2C:21-17.4(a).

96.     A private party may bring an action under *N.J.S.A.* § 2C:21-17.4(a) even though the Defendant has not been prosecuted for a crime. *N.J.S.A.* § 2C:21-17.4(b).

97.     A defendant is violates the Identity Theft Statute where it:

> . . . by any means including, but not limited to, the use of electronic communications or an Internet website… Impersonates another or assumes a false identity and does an act in such assumed

18

character or false identity for the purpose of obtaining a benefit for himself or another or to injure or defraud another.

*N.J.S.A.* § 2C:21-17(a)(1).

98. By sending Imitation Letters purportedly written by Eble which falsely bore her name—along with a supposed address, telephone number, NMLS number, and email address—Defendant Impersonated Eble or assumed a false identity within the meaning of the Identity Theft Statute.

99. Sending the Imitation Letters was an act designed to benefit Defendant by originating mortgages to prospective borrowers and/or to injure Eble as a competitor by redirecting potential customers away from her.

WHEREFORE, Plaintiff requests judgment in her favor awarding:

a. Injunctive relief prohibiting further impersonation of Eble and use of the Imitation Letters under *N.J.S.A.* § 2C:21-17.4(a).

b. Damages equal to the loss sustained by Eble as a result of the Defendant's conduct, including the lost sales and costs of remedying the reputational harm caused by Defendant as provided by *N.J.S.A.* § 2C:21-17.4(a).

c. Treble damages as required by *N.J.S.A.* § 2C:21-17.4(a).

d. Attorneys' fees and out of pocket costs under *N.J.S.A.* § 2C:21-17.4(a).

## Count VIII
## Invasion of Privacy

100. Plaintiff incorporates the above paragraphs as though set forth fully herein.

101. By sending the Imitation Letters signed in her name, AnnieMac appropriated Eble's name, reputation, or likeness for its own benefit.

102.  Eble did not consent to this use of her name of her name, reputation, or likeness or in any way approve AnnieMac's use of the Imitation Letters.

103.  AnnieMac sent the Imitation Letters for commercial purposes.

104.  As a result of AnnieMac's misappropriation of Eble's name, reputation, and identity Eble suffered damage including:

    a.  Damage to her professional reputation;

    b.  Loss of sales redirected from Eble to Defendant;

    c.  Reduced incentive compensation; and

    d.  Mental anguish and other emotional harm.

105.  Defendant's conduct was an egregious and outrageous attempt to intentionally sabotage a competitor justifying an award of punitive damage.

WHEREFORE, Plaintiff requests judgment in its favor in an amount to be determined at trial, plus punitive damages, prejudgment interest, postjudgment interest, and such other relief as the Court deems just and proper.

## **Demand for Jury Trial**

Plaintiff demands trial by jury for all triable issues in this action.

Respectfully submitted,

Dated: <u>June 10, 2016</u>

**FELLHEIMER & EICHEN LLP**

<u>/s/ John J. Jacko III</u>
John J. Jacko, III
NJ Attorney ID No. 17641992
Two Liberty Place
50 South 16th Street, Suite 3401
Philadelphia, PA 19102
(T) 215.253.6630
*Attorneys for Plaintiff*
*Robin Eble*